1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------x

                         23-CR-00393(HG)

UNITED STATES OF AMERICA,

                         United States Courthouse

        Plaintiff,         Brooklyn, New York

        -against-         February 13, 2025
                          11:00 a.m.

MINA TADRUS,

        Defendant.

-------------------------------x

          TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
            BEFORE THE HONORABLE HECTOR GONZALEZ
              UNITED STATES DISTRICT JUDGE

APPEARANCES

For the Government:      JOHN J. DURHAM, ESQ.
                    INTERIM UNITED STATES ATTORNEY
                    Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, New York 11201
                    BY:  JOHN O'DONNELL ENRIGHT, ESQ.
                        MARTIN SULLIVAN, ESQ.
                    Assistant United States Attorney

For the Defendant:      FEDERAL DEFENDERS OF NEW YORK
                    One Pierrepont Plaza
                    Brooklyn, New York 11201
                    BY:  JEFFREY STEVEN DAHLBERG, ESQ.

Also Present:           MINA TADRUS, DEFENDANT
                    SPECIAL AGENT BOWDEN, FBI

Court Reporter:        AVERY N. ARMSTRONG, RPR, NYRCR
                    Phone:  718-613-2419
                    Fax:    718-613-2639
                    Email:  Aarm.edny@gmail.com

Proceedings recorded by mechanical stenography.  Transcript produced by computer-aided transcription.

*AVERY N. ARMSTRONG, RPR, NYRCR*
*OFFICIAL COURT REPORTER*

(In open court.)

THE COURTROOM DEPUTY: This is criminal cause for a change of plea, docket number 23-CR-393, *United States of America versus Tadrus*.

Parties, please state your appearances for the record, starting with the Government.

MR. ENRIGHT: Good morning, Your Honor.

AUSA John Enright, together with FBI Special Agent Catherine Bowden and Special Agent Martin Sullivan from the U.S. Attorney's Office, for the Government.

THE COURT: All right. Good morning.

MR. DAHLBERG: Good morning, Your Honor.

Jeff Dahlberg, Federal Defenders of New York, here alongside Mr. Tadrus.

THE COURT: All right. Good morning. Please be seated.

All right. So Mr. Dahlberg, I understand that your client intends to change his previously entered plea of not guilty and enter a plea of guilty to Count Three of the indictment; is that correct?

MR. DAHLBERG: That's correct, Your Honor.

THE COURT: All right. Mr. Tadrus, like your attorney indicated, obviously, this is a very serious decision for you to enter a plea of guilty, so I need to go through a number of steps and questions to make sure that I'm satisfied

that your plea of guilty is both knowing and voluntary.  So I'm going to be explaining a number of rights to you that you'll be giving up as a result of changing your plea, and I need to make sure that you understand that you'll be giving up those rights.

If at any time I say anything that isn't clear or that you don't understand, let me know, and I'll try to be more clear.  Likewise, if at any time, you need to take a moment to discuss anything with your attorney, we'll take as much time as you need.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  So at this point, if I could just ask you to stand because I need you to be sworn in.

THE COURTROOM DEPUTY:  Raise your right hand.

(The witness was sworn and/or affirmed in by the courtroom deputy.)

THE DEFENDANT:  Yes.

THE COURT:  All right.  So now that you're under oath, you also should understand that if you answer any of my questions falsely -- you can be seated.  If you answer any of my questions falsely, that could subject you to additional criminal liability for answering questions in court under oath falsely.

Do you understand that?

PROCEEDINGS                          4

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  If you -- is the mic -- if you can just move that closer.  I'm going to ask you a number of questions now.

Can you tell us, what is your full name?

THE DEFENDANT:  Mina Tadrus.

THE COURT:  And how old are you?

THE DEFENDANT:  Thirty-eight, Your Honor.

THE COURT:  And what is the highest level of education that you have?

THE DEFENDANT:  A master's and a law degree.

THE COURT:  A master's degree?

THE DEFENDANT:  And a law degree.

THE COURT:  And what is the master's in?

THE DEFENDANT:  Intelligence studies.

THE COURT:  In what?

THE DEFENDANT:  Intelligence studies.

THE COURT:  Intelligence studies?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And obviously, you're able to speak and understand English; is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you ever been treated or hospitalized for any sort of mental illness?

THE DEFENDANT:  I had ADHD at one point in

undergrad. No hospitalization whatsoever or anything like that. Just a prescription. That's it.

THE COURT: And are you currently under the care or treatment of a doctor or psychiatrist for any condition?

THE DEFENDANT: No, Your Honor. I do -- I do have a therapist. I don't believe she's a psychiatrist or psychologist. I'm not sure. But she's not a psychiatrist.

THE COURT: All right. And have you ever been treated or hospitalized for any type of addiction for alcohol or any other substance?

THE DEFENDANT: No, Your Honor.

THE COURT: And during the last 24 hours, have you taken any sort of medication, whether over-the-counter or prescription, or drank any alcohol or any other substance that would affect your ability to understand what's happening here today?

THE DEFENDANT: No, Your Honor. I may have taken Advil yesterday, but no --

THE COURT: Advil?

THE DEFENDANT: Yes.

THE COURT: And do you feel that your mind is clear today?

THE DEFENDANT: Absolutely. Yes.

THE COURT: And do you understand what is going to happen today?

PROCEEDINGS                        6

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you can try to keep your voice up --

THE DEFENDANT:  Sure.

THE COURT:  -- so that the reporter doesn't have to struggle.

Mr. Dahlberg, based on your interactions with Mr. Tadrus, do you believe he has any physical or mental condition that would impair his ability to participate and understand today's proceedings?

MR. DAHLBERG:  No, Your Honor.

THE COURT:  And have you had enough of an opportunity to discuss the matter with him?

MR. DAHLBERG:  Yes, I have.

THE COURT:  And based on your discussions with him, do you believe that he understands the rights that he'll be waiving by pleading guilty today?

MR. DAHLBERG:  Yes, I do, Judge.

THE COURT:  And also based on your interactions with him, is it your opinion that he is capable of understanding the nature of today's proceedings?

MR. DAHLBERG:  Yes, Your Honor.

THE COURT:  And do you have any doubt as to his competence to enter a plea of guilty today?

MR. DAHLBERG:  I do not.

THE COURT:  All right.  And have you had an

opportunity to advise him of the possible exposure and consequences in terms of sentence as a result of his plea of guilty?

MR. DAHLBERG:  Yes, Your Honor.

THE COURT:  And have you also had an opportunity to discuss with him the effect of the advisory sentencing guidelines?

MR. DAHLBERG:  Yes, I have.

THE COURT:  Mr. Tadrus, do you feel that you've had enough of an opportunity to discuss today's proceedings and the consequences of today's proceedings with your attorney and that you understand what will happen today?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  And over all, are you satisfied with the representations that you received from counsel?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, have you been given -- I assume you've been given a copy of the indictment.  That's the instrument that has the charges against you.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And you've had an opportunity to review that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, Mr. Enright, I understand from

reading the plea agreement and also from Mr. Dahlberg's representation that the defendant will be pleading guilty to just Count Three of the indictment.

Can you just briefly summarize what Count Three is. And Mr. Tadrus, I want you to pay close attention to what Mr. Enright will summarize, because after that, I'm going to ask you if that's also your understanding of what you intend to plead guilty to today, okay?

THE DEFENDANT:  Yes, Your Honor.

MR. ENRIGHT:  Yes, Your Honor.

Count Three of the indictment charges investment advisor fraud, the elements of which are, first, that the defendant was acting as an investment advisor; second, that the defendant either employed a device, scheme, or artifice to defraud an actual or prospective investor client, engaged in a transaction, practice, or course of business which operated as a fraud and -- engaged in a transaction, practice, or course of business which operated as a fraud and deceit upon those investors or prospective investors.  Or engaged in an act, practice, or course of business that was fraudulent, deceptive, and manipulative; the third element is that the defendant advised or participated in such alleged device, scheme, or artifice to defraud or engaged in such alleged transaction, practice, or course of business knowingly, willfully, and with the intent to defraud; And the fourth

element is that the defendant employed such alleged device, scheme, or artifice to defraud or engage in such alleged transaction, practice, or course of business by use of the mails or any instrumentality of its interstate commerce.

Those are the elements of the charged crime, Your Honor.  I'm happy to give the factual proffer as to how the Government believes those elements are met or if you just prefer to have the --

THE COURT:  We could do that during the defendant's allocution.

Mr. Tadrus, is that your understanding, broadly, of what the criminal charges against you in Count Three of the indictment are and that that is the count that you will be pleading guilty to?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  And have you fully discussed that charge, as well as the case in general, with your attorney?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you feel that you have an understanding of what the charges are against you?

THE DEFENDANT:  Yes, sir.

THE COURT:  And Mr. Dahlberg, do you believe that Mr. Tadrus understands the charges and the nature of the charges against him?

MR. DAHLBERG:  I do, Your Honor.

THE COURT:  Mr. Enright, were any alleged victims notified with respect to today's proceedings and the intent of the defendant to plead guilty?

MR. ENRIGHT:  Yes.

Our victim witness coordinator gave notice to all known victims, and I understand and believe that at least one victim is in the gallery today, Your Honor.

THE COURT:  And do you have an understanding of whether that victim intends to make any statement at this point?

MR. ENRIGHT:  I do not believe.

THE COURT:  Mr. Tadrus, what I'm going to do now is go through a series of rights that all criminal defendants have, but that you'll be giving up as a result of changing your plea to a plea of guilty.  And I'm going to ask you if you understand that you have those rights and also that you'll be giving them up.

You have a right to continue to plead not guilty. No one can be forced to plead guilty.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You would have a right, under the Constitution and the laws of the United States, to both a speedy and a public trial by a jury.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  At that trial, you would be presumed innocent and the Government would have to prove your guilt beyond a reasonable doubt.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You would have the right to the assistance of counsel for your defense who would represent you at trial and at every other stage of the proceeding.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  At that trial, you would have the right to see and hear all witnesses and have them cross-examined in your defense.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You would have the right, on your own part, to decline to testify unless you voluntarily elected to do so in your own defense.

Do you understand?

THE DEFENDANT:  Yes.  Your Honor.

THE COURT:  You would have the right to compel the attendance of witnesses to testify in your defense at that trial.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you were to decide not to testify or to put on any evidence at trial, I would instruct the jury that those facts could not be used against you.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  By entering a plea of guilty today, if I accept your plea, there will be no trial, and you will have waived or given up your right to a trial, as well as those other rights associated with the trial that I just described.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So there will be no further trial of any kind and no right of appeal from the judgment of guilty.  I will simply enter a judgment of guilty on the basis of your guilty plea.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, if you plead guilty, I'm going to ask you questions about what it is you did that makes you guilty of the offense in order to satisfy myself of your guilt, so you will effectively be giving answers that incriminate yourself.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand each and every one of the rights, Mr. Tadrus, that I've just gone over with you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And are you willing to give up your right for a trial and those other rights as part of entering your plea of guilty today?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I also understand that you will be pleading guilty pursuant to what's known as a plea agreement with the Government; is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  We have a signed --

MR. ENRIGHT:  I handed up a copy to Mr. Neptune earlier, Your Honor.

THE COURT:  All right.  Mr. Tadrus, I'm going to have the plea agreement, the original, marked as Court's Exhibit 1, and ask that the original be kept in the custody of the Government.

Is that your signature that I saw on the last page of the plea agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And did you have an opportunity to read and discuss that plea agreement with your attorney before you signed it?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you feel that you had sufficient time to review it with your attorney?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And to the extent you had any questions about that agreement, were those questions answered to your satisfaction?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Dahlberg, did you have, in your opinion, sufficient time to review the agreement with your client?

MR. DAHLBERG:  Yes, we did, Your Honor.

THE COURT:  Mr. Tadrus, do you have any questions for me about the agreement?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And does that agreement, the plea agreement that I marked as Court's Exhibit 1, represent in its entirety, any understanding that you have with the Government?

In other words, other than that agreement, there are no other, either written or oral side agreements; is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Has anyone made any promise or assurance to you that is not in the agreement to persuade you to accept the agreement?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And has anyone threatened you in any way to persuade you to accept the agreement?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Mr. Dahlberg, were all formal plea offers from the Government conveyed to your client?

MR. DAHLBERG:  Yes, Your Honor.

THE COURT:  All right.

Mr. Tadrus, I'm now going to tell you about some of the possible penalties for the crime to which you'll be pleading guilty to.

So the charge you intend to plead guilty to in Count Three which has been referred to as investment advisor fraud, has no minimum, mandatory minimum term of imprisonment. Likewise, has no mandatory sentence whatsoever, but does have a maximum possible term of imprisonment of five years.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And any term of imprisonment related to the charge to which you intend to plead guilty may be followed by a term of supervised release.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And the maximum term of supervised release for Count Three is one year.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, what "supervised release" means is that you'll be under the supervision of the probation department which means you'll have to follow certain conditions of supervision and if you violate those conditions of supervision, and if I find that you did violate those conditions, that could result in additional prison time for you, in addition to any other prison time that you got as a result of the crime that you're pleading guilty to.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, for Count Three, you also face a possible fine of $250,000 or twice the gross gain or loss from the offense.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And in addition, because you're pleading guilty to one count, I'm obligated to impose what's known as a special assessment of $100.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You will also be required to pay restitution in the full amount of each victim's losses as those are determined by me.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Let me ask the parties.

Is there any agreement on restitution that is not covered in the -- because I didn't see any in the plea agreement.

MR. ENRIGHT:  Nothing other than what's set forth in paragraph six, Your Honor, which speaks to, as Your Honor knows, the parallel SEC case before Judge Block.  The SEC wanted -- got a TRO, froze investment funds of approximately $3.2 million, and what paragraph six states is that those funds, once the SEC's case is resolved, will be used to, at least partially satisfy the defendant's restitution obligations.

THE COURT:  Mr. Tadrus, do you understand that the plea agreement has that provision as Mr. Enright just described?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I also see from the plea agreement, that in addition to the possible sentence that I could impose that you're also subject to potential debarment and other issues.

Mr. Enright, if you could explain the other potential penalties that the defendant may face from -- with respect to any SEC action.

MR. ENRIGHT:  Yes, Your Honor.

PROCEEDINGS                    18

Upon final judgment in the SEC action, the SEC has administrative abilities to bar Mr. Tadrus from acting as a registered representative of a broker dealer or as a representative of an investment advisor, participation in a penny stock offering.  Those are the sorts of collateral consequences that the SEC refers to as an industry bar.  And that's something that they can seek administratively upon either conviction here or the entry of the final judgment in their case.

THE COURT:  Mr. Tadrus, do you understand that as a result of the conviction in this case, you could face these other civil penalties, including some form of debarment, as well as monetary penalties such as disgorgement and civil penalties?

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, I mentioned briefly at the beginning of today's proceeding and asked your attorney whether you had had an opportunity to discuss with him the advisory sentencing guidelines, and I'm going to go through that now.

So under the various sentencing statutes, when I impose a sentence on you, I will have to consider the sentencing guidelines.  Now, while those sentencing guidelines are not mandatory, they are -- in other words, they're

advisory.  They are one of the factors that I do need to consider in determining what the appropriate sentence for you is under the federal sentencing statute, which is known as Section 3553(a).

Have you and your attorney discussed how the advisory sentencing guidelines might affect your sentence in this case and how they might apply to you?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now, Mr. Enright, based on my review of the plea agreement, I understand that the Government believes that the applicable guideline range for this charge is 97 to 121 months after adjustments; is that correct?

MR. ENRIGHT:  That's correct, Your Honor.

THE COURT:  All right.  And Mr. Dahlberg, do you have any different view of what the guidelines are?

MR. DAHLBERG:  We do, Your Honor.

We intend to make arguments that a lower guidelines range applies, and for that reason, we did not -- the plea agreement does not contain a stipulation as to the appropriate guideline range.

THE COURT:  All right.  So I do have -- so I just want to make sure.  So there is no -- you're not stipulating to any of the various adjustments in the plea agreement?  I just want to make sure I understand what the agreement is.

MR. DAHLBERG:  No.  We're not stipulating to any

part of the guideline calculation.  I don't expect that we're going to contest every single adjustment.  But I do, for example, expect we may contest the amount of the loss, and, potentially, as well the sophisticated means enhancement.

THE COURT:  All right.  And the one thing I did notice, Mr. Enright, is that the base offense level was set at seven.  And just looking at 2B1.1, given that the maximum penalty here is a five -- I mean, the maximum term of imprisonment here is five years, wouldn't the base offense level of six be the appropriate base offense level here?

MR. ENRIGHT:  You're correct, Your Honor.  That's an error.

MR. DAHLBERG:  That's correct, Your Honor.

THE COURT:  All right.  So that'll be one less thing we have to deal with at sentencing.

So for example, I just want to be clear, there's been no agreement with respect to whether the defendant is eligible for the Zero-Point Offender?

MR. DAHLBERG:  No.  I don't believe we have an agreement on that.  No, your Honor.

THE COURT:  So again, to be clear, there are no stipulations about whether the defendant's offense resulted in substantial financial hardship to any of the individual victims which would be one of the carve-outs for the Zero-Point Offender?

MR. DAHLBERG:  That's correct.  We don't have an agreement as to whether he qualifies for Zero-Point Offender. There is one -- I think the reason is he may receive one criminal history point, as it is.  I think we're waiting for the presentence report to tell us for sure.

THE COURT:  Okay.  Very good.  All right.  So we'll deal with that, obviously, at the time of sentencing.

Regardless of what the ultimate sentencing guideline calculation is, I determine at the time of your sentencing, at least from the plea agreement, the plea agreement has a calculation that now, with at least that one adjustment that the Government agreed to, your offense level, after acceptance of responsibility instead of being level 30, 97 to 121, is now level 29, or 87 to 108 months, at least as the Government has indicated in the agreement.

If that was the ultimate sentence, sentencing guideline that I concluded was appropriate, the effective or the restricted guideline for you would actually be just 60 months, and that's because your sentence, the maximum sentence on your offense is five years.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Anything else about the guideline calculation and how the maximum sentence, if the guidelines turn out to be higher than 60 months, would be affected in

this case, Mr. Enright?

MR. ENRIGHT:  No.  The Government agrees with Your Honor that it would be capped at 60 months.

THE COURT:  All right.  Anything else in terms of guideline calculations?  And I understand, Mr. Dahlberg, you're keeping it all open for sentencing.

MR. DAHLBERG:  Just that we would ask that at the end of the proceeding, if we can mark the change, the correction that Your Honor caught about the base offense level and the resulting total offense level and the Government's calculation.  If we could --

THE COURT:  I'll allow -- sorry to interrupt you. I'll allow -- obviously, we have it on the record.  But the parties can initial and make that correction.  And unless there's an issue, since the Government is keeping custody of Court Exhibit 1, I don't need to see that again.

MR. ENRIGHT:  The Government doesn't have any objection to doing that, Judge.

THE COURT:  Okay. All right.  So Mr. Tadrus, what you should understand is that any estimate of the guidelines could be wrong.  I won't be able to determine the advisory guideline range for your case until after the presentence report has been prepared by the probation department and both you, your attorney, and the Government, have had an opportunity to read that and make whatever comment or

objection they have to the probation department's calculation.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that the sentence I impose may be different from any estimate that either you or the Government may have given -- either that your attorney or the Government may have given you?

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So as a general matter, I have the authority in some circumstances to either depart upward or downward from the advisory guideline range and that could result in a sentence that is either greater or lesser than the advisory guidelines, and obviously cabined by whatever the maximum sentence is that you pled guilty to.

As you sit here today, therefore, what you need to understand is that there's no guarantee to a particular sentencing guideline range.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand that if the advisory guideline range in the presentence report is different from the guideline range that either your attorney may have advised you about or that you might expect, that you will not be able to take back your plea?

PROCEEDINGS

24

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So if the ultimate sentence I impose is different than what you hope for or expect, you will not be able to take back your plea, and as you sit here today, there's no way for you to know what your ultimate sentence will be because I have not begun to analyze what the proper sentence in your case is.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You should also understand that there's no longer parole in the federal system, which means that whatever sentence of imprisonment, if you get a sentence of imprisonment, will not be terminated early as a result of parole.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You should also understand that under some circumstances, you or the Government may have the right to appeal any sentence that I impose.  But I see in paragraph four of your plea agreement that you've agreed to what's known as an appeal waiver.

So what I need you to understand is that by entering into this plea agreement and entering a plea of guilty, you will have waived or given up your right to appeal or collaterally attack, which means to challenge in a way other

than through an appeal, any part of your sentence or conviction, so long as I sentence you to a period of imprisonment of 60 months or less.

THE COURT: Do you understand that you've agreed to that appeal waiver?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any questions for me about the rights you're giving up, the punishments you might face, the plea agreement, the nature of the charges, or anything else related to this matter?

THE DEFENDANT: No, Your Honor.

THE COURT: And are you ready to plead guilty at this time, Mr. Tadrus?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And Mr. Dahlberg, do you know of any reason why your client should not plead guilty at this time?

MR. DAHLBERG: No, Your Honor.

THE COURT: And Mr. Tadrus, what is your plea to Count Three of the indictment, the investment advisor fraud count; guilty or not guilty?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: And are you making the plea of guilty voluntarily and of your own free will?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And has anyone threatened or forced you

to plead guilty?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And other than the plea agreement with the Government, has anyone made any promise that caused you to plead guilty?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Has anyone made any promise to you as to what your sentence will be?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  So at this time, what I need is for you to tell me, in your own words, what it is that you did that makes you guilty of the charges in Count Three.

And before you begin am I correct that I see that you'll be reading a prepared statement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And did you have an opportunity to discuss that statement with your attorney?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And regardless of who had the main role in drafting or preparing this statement, are you adopting that prepared statement as if you had written it all on your own?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And to the extent, you had any questions about that statement, did your attorney answer those questions to your satisfaction?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. So at this time, if you can read that statement, but read it slowly because we all have a tendency to speak more quickly when we read, and I want to make sure that the reporter gets down exactly what you stated.

THE DEFENDANT: Yes, Your Honor.

Between September 2020 and July 2023, I was an investment advisor at Tadrus Capital, LLC. To attract and retain investors --

THE COURT: Can you slow down. Just go back.

So you were an investment advisor at Tadrus.

THE DEFENDANT: I was an investment advisor at Tadrus Capital, LLC. To attract and retain investors, I took actions that were deceptive. I did so willingly and with intent to defraud. I did so using the internet.

THE COURT: You did so using?

THE DEFENDANT: Using the internet.

(Whereupon, a portion of the proceedings was read back.)

THE COURT: When you say you took actions that were deceptive, what kind of actions did you take? Just give me an example.

MR. DAHLBERG: Just a moment, Your Honor.

THE COURT: Yup.

MR. DAHLBERG: Thank you.

(Pause in the proceedings.)

THE DEFENDANT:  I shared information with investors that my funds had certain performances that weren't true.

THE COURT:  Certain economic performance or financial performance that wasn't true?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Mr. Enright, do you believe that there is any additional element or an element that the defendant needs to allocute to satisfy the elements of Count Three?

MR. ENRIGHT:  I would make a proffer to Your Honor as to venue.

When the defendant created Tadrus Capital, LLC, he resided in the Eastern District of New York in Brooklyn.  From there, he solicited investments from individuals who also lived in the Eastern District of New York, some in Staten Island, some in Brooklyn.

THE COURT:  All right.  Mr. Tadrus, you've heard Mr. Enright describe what lawyers refer to as venue.

Is it correct that at least some portion of the fraud that you engaged in occurred while either you were residing in Brooklyn or some of the individuals, clients that you were contacting were residing in Brooklyn; is that true?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Anything else with respect to his

allocution? because then I'll ask you what else the Government would be able to proffer.

MR. ENRIGHT:  I don't think so, Your Honor.

THE COURT:  All right.  So what else would the Government be able to demonstrate, if necessary, at trial, Mr. Enright?

MR. ENRIGHT:  The Government would prove beyond a reasonable doubt, Your Honor, that the defendant not as a registered investment advisor with the SEC but as an unregistered investment advisor, that is for consideration, he advised his prospective investors and actual investors as to the merits of investing in Tadrus Capital, LLC, his trading strategies, et cetera.

As to the second element of the fraud that he perpetrated on his investors, among other things, he misrepresented to investors how the proceeds of their investments would be used, he misrepresented the fact that he was employing various trading strategies when in reality, he was not trading investor's money at all, that he did so with intent and he did so willfully, as evidenced by the absence of trading, the use of investor funds to pay himself and employees, his failure to open up brokerage accounts, to do trading of any kind.

And as to interstate means, Judge, we would enter into evidence voluminous records showing that he communicated

with investors by phone, by e-mail, by various text messaging applications, that he received moneys that were wired into bank accounts that you controlled, and that traveled across state lines.

THE COURT:  All right.  Mr. Dahlberg, do you have any -- do you believe that any additional allocution from your client is required to satisfy the elements of Count Three?

MR. DAHLBERG:  No, Your Honor.

THE COURT:  All right.  Anything else, Mr. Enright, that you believe is necessary?

MR. ENRIGHT:  No, Your Honor.

THE COURT:  All right.  So based on the information given to me, as well as my observations of Mr. Tadrus here in court today, and his demeanor and the representations of counsel, I find that Mr. Tadrus is first fully competent and capable of entering an informed plea, that he is aware of the nature of the charges and the consequences of his guilty plea, and that his plea of guilty is a knowing and voluntary plea, and is supported by an independent basis in fact containing the essential elements of the offense.  I therefore accept the defendant's plea of guilty to Count Three of the indictment.

Now, Mr. Tadrus, what will happen next is that a written presentence report will be prepared by the probation department.  As part of that report, probation will ask to interview you.  You have the right to decline to be

interviewed.  But if you do decide to be interviewed by the probation department, obviously, your attorney will be present for that interview.

Once the probation department prepares its presentence report, you'll have an opportunity, with your attorney, to review that presentence report and to lodge any objections to any portion of that presentence report, as will the Government.  You will also have a right, in addition to lodging any objections to the presentence report, with the help of your attorney to submit whatever sentencing materials you believe are relevant to my decision in terms of determining your sentence, but that is all something that you will go through with your attorney once the probation department prepares its report.

Mr. Neptune, do we have a date?

THE COURTROOM DEPUTY:  Yes.  May 14th.

THE COURT:  All right.  So at this time, I'm not setting a sentencing date.  What I'm going to do is set a date by which the probation department will release its presentence report.  After that, the report is issued, then Mr. Neptune will reach out to the parties to schedule the sentencing date and we'll work off of that sentencing date in terms of the date for the submission of any sentencing materials.

What I do ask the parties, though, because I want to sort of nip it in the bud, is I've just been seeing issues

with scheduling interviews causing delay and not by either of the attorneys here, but just in general, causing a delay of the issuance of the presentence report as well as delay on the part of the Government in submitting necessary information to the probation department.

So what I'm going to ask the parties is, if 30 days from today -- so by March 13th, if the parties could just submit a brief joint letter just indicating to me, one, from the defendant's side, whether the defendant's interview has either occurred already or has been scheduled, and if it hasn't been scheduled, why it hasn't been scheduled; and from the Government, just a very brief statement about whether the Government has shared all necessary evidence and information that they believe probation should have for preparation of its report.  So that if the parties can just submit that jointly, by March 13th.

Any questions about that?

MR. ENRIGHT:  No, Your Honor.

THE COURT:  All right.  Mr. Dahlberg?

MR. DAHLBERG:  No, Your Honor.

THE COURT:  All right.

Mr. Tadrus, I remind you that pending your sentence, you're still under the same bond conditions as you've been. So you need to continue, obviously, to comply with those.  I haven't heard any reports of your violating those terms, but I

just want to remind you it's critical that you continue to comply with those because if there are any violations of those terms, that certainly will play a role in how I view what an appropriate sentence for you will be.  All right.

Anything else while you have me, Mr. Enright?

MR. ENRIGHT:  No, Your Honor.

THE COURT:  Mr. Dahlberg?

MR. DAHLBERG:  No, Your Honor.

THE COURT:  All right.  Thank you, everyone.  We're adjourned.  Thank you.

(Whereupon, the matter was concluded.)

\*     \*     \*     \*     \*

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

    s/ Avery N. Armstrong                July 31, 2025

      AVERY N. ARMSTRONG                 DATE